**O**

# United States District Court
# Central District of California

| | |
|---|---|
| MICHAEL ABDELMASIH,<br>Plaintiff,<br>v.<br>KEMPER CORPORATION, et al.,<br>Defendants. | Case № 2:26-cv-04557-ODW (PDx)<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION [12]** |

## I. INTRODUCTION

Plaintiff Michael Abdelmasih asserts thirteen causes of action for retaliation, wrongful termination, breach of contract, wage violations, and other claims against Defendants Kemper Corporation and United Insurance Company of America. (Decl. Robert S. Blumberg ISO Notice Removal Ex. A ("Compl."), Dkt. No. 1-3.) Defendants now move to compel Abdelmasih to arbitrate his claims pursuant to the Federal Arbitration Act ("FAA"). (Mot. Compel Arb. ("Motion" or "Mot."), Dkt. No. 12.) For the reasons below, the Court **GRANTS** the Motion.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

In February 2022, Abdelmasih began working as an insurance sales agent for United Insurance in Los Angeles, California. (Decl. Michael Abdelmasih ISO Opp'n ("Abdelmasih Decl.") ¶ 3, Dkt. No. 17-1.) United Insurance is a subsidiary of Kemper. (Decl. Scott Pfister ISO Mot. ("Pfister Decl.") ¶ 2, Dkt. No. 12-2.) By August 2023, Defendants promoted Abdelmasih to sales manager. (Abdelmasih Decl. ¶ 4.) However, allegedly due to his complaints over sales commission reductions, Defendants terminated Abdelmasih in August 2025. (Abdelmasih Decl. ¶¶ 11–15.)

Abdelmasih executed three arbitration agreements during his employment. (Pfister Decl. ¶¶ 5–7.) Abdelmasih executed the first arbitration agreement in February 2022; the second agreement in June 2023; and the third agreement in August 2023. (*Id.*) The relevant language in each of the three arbitration agreements is substantially identical.[2]

The Arbitration Agreement requires Abdelmasih to arbitrate "any dispute, past, present, or future, including, without limitation, disputes arising out of or related to Employee's application for employment, employment or other relationship, and/or termination of employment with the Company." (Pfister Decl. Ex. D ("2023 Arb. Agreement") § 1, Dkt. No. 12-2.) The Arbitration Agreement also notes that "this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." (*Id.*) Moreover, the Arbitration Agreement states that "[c]overed disputes also include disputes arising out of or relating to the validity, applicability, enforceability, or waiver of this Agreement including but not limited to any claim that all or any part of this Agreement is void or voidable." (*Id.*)

[2] Given the similarity among the three arbitration agreements, the Court will refer to them collectively as the "Arbitration Agreement" and will cite from the most recent agreement, where necessary.

On March 24, 2026, Abdelmasih filed this lawsuit and asserted thirteen causes of action against Defendants. (Compl. 1–2.) Defendants now move to compel arbitration and stay the case pending completion of arbitration. (Mot. 18.)

## III. LEGAL STANDARD

The FAA is meant to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alteration in original). Section 2 of the FAA creates a policy favoring enforcement, stating that arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting 9 U.S.C. § 2). Under the FAA, a party to such an agreement may petition an appropriate federal district court to compel arbitration. 9 U.S.C. § 4.

The FAA governs a contract dispute relating to an arbitration provision if the contract affects interstate commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995). When it applies, the FAA restricts a court's arbitration inquiry to two threshold questions: (1) whether there was an enforceable agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Cox*, 533 F.3d at 1119. A delegation provision further limits a court's "review by assigning these gateway questions to an arbitrator." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (citing *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999–1000 (9th Cir. 2021)). If an arbitration agreement contains a delegation provision, a party opposing arbitration must specifically challenge the delegation provision. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010). If the party fails to do so, a court must treat the delegation provision as valid, order arbitration, and leave "any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.*

## IV. DISCUSSION

The core of the dispute between the parties concerns arbitrability and unconscionability. Defendants contend that the Arbitration Agreement clearly and

unmistakably delegates arbitrability to an arbitrator. (Mot. 7–8.) Abdelmasih disagrees and further asserts that the delegation clause itself—and the agreement as a whole—is unconscionable. (Opp'n 9–20, Dkt. No. 17.)

Arbitrability can be delegated to an arbitrator if the parties clearly and unmistakably agree to do so. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). However, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Courts have found that arbitration agreements clearly and unmistakably delegate arbitrability when they use certain words, such as when they give arbitrators the ability to determine the "validity," "applicability," or "enforceability" of an arbitration agreement. In *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011), the court held language "delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause" meant that "the parties clearly and unmistakably agreed to arbitrate the question of arbitrability." The court held that the delegation clause delegated arbitrability to the arbitrators even though the clause did not use the term "arbitrator." *Id.* Similarly, a court held that a delegation clause that gives the arbitrator the "exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation" of the agreement "is a clear and unmistakable agreement to arbitrate arbitrability." *Hess v. Valero Servs., Inc.*, No. 2:23-cv-04578-WLH (SKx), 2023 WL 8044373 at *2 (C.D. Cal. Oct. 13, 2023).

Here, Defendants' Arbitration Agreement states that "all such disputes [are] to be resolved only by an arbitrator," and the delegation clause further states that "[c]overed disputes also include disputes arising out of or relating to the validity,

applicability, enforceability, or waiver of this Agreement." (2023 Arb. Agreement § 1.) As in *Momot* and *Hess*, the delegation clause mentions "validity," "applicability," and "enforceability." In addition, the structure of the delegation clause paragraph delineates between, on one hand, disputes that are not resolved by an "arbitrator" and, on the other hand, "[c]overed disputes" to be resolved by an arbitrator. (*Id.*) While the delegation clause does not explicitly state covered claims will be resolved by an "arbitrator," use of the term is not required to clearly and unmistakably delegate arbitrability. *See Momot*, 652 F.3d at 988. The context of the delegation clause within the broader Arbitration Agreement makes it clear and unmistakable that the agreement requires an arbitrator to decide arbitrability. The Court thus finds that the Arbitration Agreement delegates arbitrability to an arbitrator.

Nevertheless, Abdelmasih argues the delegation clause itself is unconscionable and therefore unenforceable. "[I]f a party specifically challenges the delegation provision . . . 'the federal court must consider the challenge before ordering compliance' with it." *Bielski*, 87 F.4th at 1009 (citing *Rent-A-Center*, 561 U.S. at 71). A party can "challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023). In addition, "a party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." *Bielski*, 87 F.4th at 1009–10.

Here, Abdelmasih specifically challenges the delegation clause as unconscionable. (Opp'n 10–12.) However, Abdelmasih does not sufficiently tie his broader unconscionability arguments to the delegation clause. None of Abdelmasih's arguments—regarding the scope of the agreement, the severability of its provisions, or the substantive and procedural circumstances—establish that the delegation clause itself is unconscionable. For example, without more explanation by Abdelmasih, Defendants' alleged threats to terminate Abdelmasih if he did not sign the agreement

do not establish that the delegation clause (as opposed to the agreement itself) is unconscionable. (Opp'n 12–13.) Therefore, Abdelmasih fails to establish that the delegation clause in the Arbitration Agreement is unconscionable. As such, the Court leaves Abdelmasih's unconscionability challenges for the arbitrator. *See, e.g.*, *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1201 (9th Cir. 2024) ("Thus, plaintiffs' remaining unconscionability challenges to the Arbitration Agreement fall within the scope of the enforceable Delegation Provision, and we leave them to the arbitrator in the first instance.").

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Compel Arbitration. (Dkt. No. 12.) The parties are hereby **COMPELLED** to arbitrate the claims Abdelmasih asserts in his Complaint, and this civil court action is **STAYED** pending the completion of arbitration. Consequently, the Court **DENIES** Defendants' Motion to Stay Case as **MOOT**. (Dkt. No. 25.)

Starting on December 1, 2026, and by the first of the month every three (3) months thereafter, the parties shall file a Joint Status Report informing the Court of the status of arbitration. Furthermore, the parties shall file a Joint Status Report no later than ten (10) days following the conclusion of arbitration.

**IT IS SO ORDERED.**

September 11, 2026

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**